UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
COLOR-WEB, INC., DAVID MOYAL and     :         16cv1435(DLC)
1 800 POSTCARDS, INC.,               :
                                     :         OPINION AND ORDER
              Plaintiffs,            :
                                     :
              -v-                    :
                                     :
MITSUBISHI HEAVY INDUSTRIES PRINTING & :
PACKAGING MACHINERY, LTD., MITSUBISHI  :
HEAVY INDUSTRIES, LTD., MITSUBISHI     :
HEAVY INDUSTRIES AMERICA, INC., RM     :
MACHINERY INC., MLP U.S.A., INC., AND  :
MARKE BAKER,                           :
                                     :
              Defendants.            :
                                     :
------------------------------------ X

APPEARANCES

For the plaintiffs:

Michael J. Kapin
Michael J. Kapin, P.C.
305 Broadway, Suite 1004
New York, New York 10007

For the defendants:

Nancy E. Sasamoto
David J. Stein
Masuda, Funai, Eifert & Mitchell, Ltd.
203 N. LaSalle Street, Suite 2500
Chicago, Illinois 60601

Jean Claude Mazzola
Ruofei Xiang
Messner Reeves LLP
733 Third Avenue, 15th Floor
New York, New York 10017

DENISE COTE, District Judge:

Plaintiff Color-Web, Inc. ("Color-Web") ordered a printing press from defendant MLP U.S.A., Inc. ("MLP").  The printing press was never delivered and Color-Web subsequently went out of business.  In their first amended complaint ("FAC") the plaintiffs raise claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") as well as state law fraud. The defendants have moved to compel arbitration.  For the following reasons, the defendants' motion is granted.

## Background

The following facts are taken from the FAC and documents attached to or integral to the FAC.

## I.  The Parties

The plaintiffs in this action are David Moyal ("Moyal") and two printing companies controlled by Moyal: Color-Web and 1 800 Postcards, Inc. ("Postcards").  The defendants include five corporate entities associated with Mitsubishi: (1) Mitsubishi Heavy Industries, Ltd. ("MHI"), a Japanese corporation and the corporate parent; (2) Mitsubishi Heavy Industries Printing & Packaging Machinery, Ltd. ("MHIPPM"), a Japanese corporation that builds Mitsubishi's printing presses; (3) Mitsubishi Heavy Industries America, Inc. ("MHIA"), a Delaware corporation that is in charge of Mitsubishi's U.S. operations; (4) MLP, a

Delaware corporation responsible for Mitsubishi's U.S. sales; and (5) RM Machinery Inc. ("RM Machinery"), a Delaware corporation and successor to MLP.  Defendant Marke Baker ("Baker") is an individual alleged to be or to have been an employee and agent of MLP and RM Machinery.

## II.   Purchase of the Printing Press

### A. The Sales Agreement

On November 14, 2007, Color-Web entered into a sales agreement (the "Sales Agreement") with MLP for the purchase of a Mitsubishi Diamond color printing press (the "Printing Press"). The purchase price of the Printing Press was $3,695,000, which included $200,000 due upon execution of the Sales Agreement as a down payment plus $3,495,000 due 485 days following delivery of the Printing Press.  The Sales Agreement was contingent on Color-Web obtaining financing for the purchase through the financing company Peoples Capital and Leasing Corp. ("Peoples"). The Printing Press was scheduled to be delivered in September 2008.

The Sales Agreement included an arbitration clause that provides:

> Except for Seller's right to seek collection of payments due or replevin of the Equipment referenced herein in accordance with its security interest in the event of Purchaser's failure to provide for return of the same in violation of this Agreement, all disputes and claims arising out of or in any way related to

3

<u>this Agreement</u>, or arising in connection with this Agreement and all disputes and claims regarding any alleged defects in the Equipment <u>shall be resolved exclusively by final and binding arbitration</u> conducted in Chicago, Illinois, pursuant to the American Arbitration Association's Model Commercial Arbitration Rules.  The arbitration shall be before a panel of three (3) arbitrators.  The arbitration opinion and award shall be final and binding upon the parties and enforceable by any court of competent jurisdiction. Seller and Purchaser shall share equally all costs of arbitration (except their own attorneys' fees).

(Emphasis added.)

### B. Financing Agreement & Promissory Note

To finance the purchase of the Printing Press, Color-Webb sought a loan from Peoples, a finance company with which Moyal had previously worked in purchasing other equipment for his businesses.  On or about November 13, 2007, Peoples sent Moyal a proposed financing agreement, which Moyal accepted.  The agreement contemplated that Color-Web would utilize a tax-exempt New Jersey industrial revenue bond (the "IRB").  On July 24, 2008, Color-Web and Peoples entered into a promissory note (the "Promissory Note") for $200,000, to be used to make the down payment on the Printing Press.  Under the terms of the Promissory Note, upon delivery of the Printing Press, the Promissory Note would convert into a loan with a term of 84 months.  It also stated that in the event Color-Web failed to close on the IRB by August 31, 2009, Peoples agreed to provide a conventional term loan until such time as the IRB was approved.

4

In exchange for the Promissory Note, Peoples paid $200,000 to
MLP as a down payment on the Printing Press

**C. The Transaction Was Never Completed.**

In 2009, during the recession caused by the financial
crisis, Color-Web desired to cancel the purchase of the Printing
Press.  On March 6, 2009, Color-Web entered into an extension
agreement with MLP (the "Extension Agreement").  The Extension
Agreement states:

> You have informed MLP that Color-Web's business has
> declined dramatically during the past few months as a
> result of the ongoing recession.  You have also
> advised us that Color-Web is seeking to delay its
> obligation to accept delivery of the Press at its
> plant pursuant to the Sales Agreement.  Meanwhile, as
> you know, Color-Web's counsel forwarded to MLP a
> letter dated February 12, 2009 advising MLP that
> Color-Web was canceling the Sales Agreement.  As we
> discussed, there exists no basis for cancellation and
> MLP cannot accept a cancellation of the Sales
> Agreement.  However, MLP is willing to provide a
> reasonable alternative to Color-Web to allow Color-Web
> to delay delivery of the Press as set forth in this
> letter agreement.

The Extension Agreement deferred delivery of the Printing
Press until December 31, 2009.  MLP agreed to hold the Printing
Press in storage at its own expense until the time of delivery.
The Extension Agreement also provided that "MLP and Color-Web
agree that it would be in the best interests of both parties to
have MLP attempt to sell the Press."

Color-Web never finalized financing for the purchase of the

Printing Press.  Color-Web did not close on the IRB by August 31, 2009, and Peoples refused to provide a conventional loan to finance the purchase of the Printing Press.  The Printing Press was never delivered to Color-Web.

### III.  People's Efforts to Collect on the Promissory Note

In 2011, Peoples took steps to collect on the Promissory Note.  In September 2011, Peoples brought an action against Color-Web, Postcards, and Moyal in New York state court to collect on the Promissory Note (the "Promissory Note Action").[1] Color-Web filed counterclaims against Peoples alleging that Peoples (1) breached its contract with Color-Web when it refused to offer a conventional loan to finance the purchase of the Printing Press, and (2) defrauded Color-Web by falsely representing that it would provide financing for the Printing Press.  The Promissory Note Action is still pending.

Color-Web, unable to pay its debts, went out of business and liquidated its assets in April, 2012.  As a result, Moyal alleges that he nearly went bankrupt.

### IV.  The Plaintiffs' Allegations

Because all of the plaintiffs' claims must be submitted to arbitration, the allegations in the FAC will be only briefly described.  The plaintiffs allege that Peoples and the

---

[1] Postcards and Moyal were sued as guarantors of Color-Web.

Mitsubishi defendants conspired to defraud their customers, including Color-Web.  They allege that MLP and Peoples had a "recourse agreement," in which MLP agreed to indemnify Peoples, up to a certain amount, in the event a purchaser failed to make required payments to Peoples.  The plaintiffs contend that this arrangement is fraudulent because it allows Peoples to engage in collection activity and allows the Mitsubishi entities to protect their reputation by avoiding collection activities even though they bear a portion of the default risk.

The plaintiffs also allege that, under the recourse arrangement, Peoples sought to collect money from Color-Web that it was not entitled to.  After Color-Web failed to repay the $200,000 it owed to Peoples pursuant to the Promissory Note, MLP allegedly paid $200,000 to Peoples on January 10, 2011, pursuant to the recourse agreement.  According to the plaintiffs' theory, once MLP paid $200,000 to Peoples under the recourse agreement, Peoples no longer had any right to pursue collection of the $200,000 owed by Color-Web to Peoples pursuant to the Promissory Note.

## V.   Procedural History

The plaintiffs filed this action on February 24, 2016.[2]  On

---

[2] The plaintiffs originally filed their complaint on February 24, 2016.  The complaint was marked as deficient by the Clerk of Court due to a formatting error.  The plaintiff filed a

May 13, MHIA, MLP, RM Machinery, and Baker (the "American Defendants") filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  On June 10, the plaintiffs filed the FAC, and by Order of June 13, the Court denied the American Defendants' May 13 motion to dismiss as moot.

On July 8, the American Defendants filed a renewed motion to dismiss the FAC, or in the alternative to compel arbitration. The motion became fully submitted on September 2.  Defendants MHI and MHIPPM (the "Japanese Defendants") did not initially join in this motion due to a delay in service of those defendants.  By Order of September 22, the Court held that the defendants could not simultaneously seek to dismiss the FAC on the merits and also seek to compel arbitration of any surviving claims.  The Court required the American Defendants to elect either to pursue a motion to compel arbitration or proceed only on their Rule 12(b)(6) arguments.  On September 29, the American Defendants submitted a letter stating that they wished to compel arbitration of all claims.

On October 3, the Japanese Defendants filed a motion to dismiss under Rule 12(b), or in the alternative, they joined in

---

corrected complaint on February 25.

the American Defendants' July 8 motion to compel arbitration. The Japanese Defendants also joined in the American Defendants' September 29 submission stating that they wish to compel arbitration should the Court refuse to address the Rule 12(b) arguments first.  By Order of October 4, the Court ruled that it would address the Japanese Defendants' motion to compel arbitration first, and would only address their arguments under Rule 12(b) if any claims were not compelled to arbitration.  The Japanese Defendants' motion to compel arbitration became fully submitted on October 21.

## Discussion[3]

Under Section 2 of the Federal Arbitration Act ("FAA")

> a written provision in . . . a contract evidencing a
> transaction involving commerce to settle by
> arbitration a controversy thereafter arising out of
> such contract or transaction . . . shall be valid,
> irrevocable, and enforceable, save upon such grounds
> as exist at law or in equity for the revocation of any
> contract.

---

[3] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the plaintiffs' claims arise under a federal statute -- 18 U.S.C. § 1961 et seq.  A plaintiff raising a claim under a federal statute may invoke federal jurisdiction unless "the cause of action alleged is so patently without merit as to justify the court's dismissal for want of jurisdiction." Perpetual Sec., Inc. v. Tang, 290 F.3d 132, 137 (2d Cir. 2002) (citation omitted).  Without deciding whether the plaintiffs' claims satisfy the more demanding standard for dismissal under Rule 12(b)(6), and in light of the allegations described above, the plaintiffs' claims are not "so patently without merit," that they must be dismissed for lack of federal jurisdiction.

9 U.S.C. § 2.  The FAA was enacted to counteract "widespread judicial hostility to arbitration agreements."  AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011).  The Supreme Court and Second Circuit have emphasized that the FAA "declares a national policy favoring arbitration."  See, e.g., Nitro-Lift Techs., L.L.C. v. Howard, 133 S. Ct. 500, 503 (2012) (citation omitted); Citigroup, Inc. v. Abu Dhabi Inv. Auth., 776 F.3d 126, 129 (2d Cir. 2015).

For convenience, the arbitration clause in the Sales Agreement is quoted once again.  It provides:

> Except for Seller's right to seek collection of payments due or replevin of the Equipment referenced herein in accordance with its security interest in the event of Purchaser's failure to provide for return of the same in violation of this Agreement, all disputes and claims arising out of or in any way related to this Agreement, or arising in connection with this Agreement and all disputes and claims regarding any alleged defects in the Equipment shall be resolved exclusively by final and binding arbitration conducted in Chicago, Illinois, pursuant to the American Arbitration Association's Model Commercial Arbitration Rules.

(Emphasis added.)

The plaintiffs do not dispute that all of their claims fall within the ambit of the arbitration clause as they agree that Color-Web is obligated to arbitrate its claims against MLP.[4]  The

---

[4] In the plaintiffs' opposition brief, Color-Web "acknowledges its obligation to arbitrate its disputes with MLP."  Color-Web states that it has initiated arbitration against MLP with the

only issue in dispute is whether the other plaintiffs and
defendants, who are not parties to the Sales Agreement, are
covered by the arbitration clause such that those claims must
also be submitted to arbitration.  Resolving this question
involves two separate inquiries: (1) whether the non-signatory
defendants -- MHI, MHIPPM, MHIA, RM Machinery, and Baker (the
"Non-Signatory Defendants") -- may invoke the arbitration clause
even though they are not signatories to the Sales Agreement, and
(2) whether the non-signatory plaintiffs -- Postcards and Moyal
(the "Non-Signatory Plaintiffs") -- are subject to the
arbitration clause even though they are not signatories to the
Sales Agreement.

## I.    Non-Signatory Defendants

> Under principles of estoppel, a non-signatory to an
> arbitration agreement may compel a signatory to that
> agreement to arbitrate a dispute where a careful
> review of the relationship among the parties, the
> contracts they signed, and the issues that had arisen
> among them discloses that the issues the nonsignatory
> is seeking to resolve in arbitration are intertwined
> with the agreement that the estopped party has signed.

Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 126-27 (2d
Cir. 2010) (citation omitted).  In addition, there must be "a
relationship among the parties of a nature that justifies a

_____

American Arbitration Association.  The plaintiffs request that
Color-Web's claims against MLP be stayed pending the outcome of
that arbitration.

conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." Id. at 127 (citation omitted).  For example, in Ragone, the plaintiff sued two of her co-employers for employment discrimination.  The plaintiff had executed an arbitration agreement with one employer but not the other.  The Second Circuit held that since both co-employers supervised the plaintiff, and because the employee's claims against the two co-employers were "in fact, the same dispute," the non-signatory employer could compel arbitration despite not being a signatory to the arbitration agreement.  Id. at 128.

The Non-Signatory Defendants are alleged to be the corporate parents of MLP, an agent of MLP, and the successor to MLP.  In the FAC, the plaintiffs describe the specific conduct of MLP.  The Non-Signatory Defendants' involvement in this case is limited to their relationship to MLP.  The FAC contains no allegations that the Non-Signatory Defendants engaged in any fraud distinct from that allegedly committed by MLP.  The claims against the Non-Signatory Defendants are identical to those asserted against MLP and involve the "same dispute" as the claims against MLP.  Accordingly, the Non-Signatory Defendants may invoke the arbitration clause in the Sales Agreement with

respect to each of the claims asserted by the plaintiffs.

The plaintiffs' argument to the contrary is without merit. They argue that the Second Circuit, in Sokol Holdings, Inc. v. BMB Munai, Inc., 542 F.3d 354, 361 (2d Cir. 2008), narrowed the circumstances in which a non-signatory may invoke an arbitration agreement.  Specifically, the plaintiffs contend that estoppel applies only when the party resisting arbitration is deemed to have consented to arbitration with the non-signatory.  Sokol predates Ragone, but in any event does not aid the plaintiffs. The non-signatory defendants in Sokol were not corporate affiliates with the signatory party, and the plaintiff asserted a claim against the non-signatory defendants that was distinct from the contractual dispute itself.  The plaintiff in Sokol asserted that those defendants tortuously interfered with its contract with the remaining defendant.  Id. at 362.

## II.  Non-Signatory Plaintiffs

Each of the plaintiffs is also bound by the arbitration clause in the Sales Agreement.  Among the grounds that may bind a non-signatory to an arbitration agreement is estoppel.  Denney v. BDO Seidman, L.L.P., 412 F.3d 58, 71 (2d Cir. 2005).  The doctrine of estoppel requires a party to arbitrate when that party "receives a direct benefit from a contract containing an arbitration clause."  Am. Bureau of Shipping v. Tencara Shipyard

S.P.A., 170 F.3d 349, 353 (2d Cir. 1999) (citation omitted).

Postcard's and Moyal's claims in this action arise from benefits they anticipated receiving if Color-Web had received the Printing Press.  In fact, the plaintiffs allege that Postcards was to purchase the Printing Press, but that Color-Web executed the Sales Agreement instead in order to take advantage of the IRB.  The acquisition of the Printing Press by Color-Web was to benefit Postcards by allowing it to send "larger printing jobs to Color-Web to be completed at a much more competitive cost."  In anticipation of Color-Web's purchase of the Printing Press, Postcards changed its staffing, re-tooled its facilities, and made changes to its business.

Moyal's involvement in this action stems directly from his status as the principal of both Color-Web and Postcards.  He was personally involved with the negotiation and execution of the Sales Agreement on behalf of Color-Web.  Because of Color-Web's collapse, Moyal's personal savings were depleted and he was threatened with bankruptcy.  Because the claims of these two plaintiffs relate to the direct benefits they would have obtained from Color-Web's purchase of the Printing Press under the Sales Agreement, they must arbitrate their claims.

14

## **Conclusion**

The defendants' July 8 and October 3 motions to compel arbitration are granted.  This action is stayed pending the outcome of arbitration proceedings.


Dated:     New York, New York
           November 21, 2016

                          _____
                              DENISE COTE
                     United States District Judge

15